IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v.                                                             ) | DOCKET NO. 8:09-cr-T-33EAJ |
| ) | |
| ) | |
| ROBERT CLARKE                              ) | |

### DEFENSE SENTENCING MEMORANDUM

This is a Defense Sentencing Memorandum in the above-referenced case. The defense respectfully submits this Memorandum to assist the Court in fashioning a sentence as this Court thinks just and equitable – one that is "sufficient but not greater than necessary" to achieve the objectives of section 3553. To that end, the following is respectfully submitted.

### Procedural History

On February 11, 2009, Mr. Clarke pleaded guilty to a single count information, alleging a violation of 18 United States Code, Sections 2252A(a)(5)(A) and (B) and (b)(2). The plea was pursuant to a plea agreement wherein the government, *inter alia*, agrees to not oppose a two-level downward adjustment from the advisory guideline range, and, if appropriate, also agrees to file a motion for an additional one level downward departure. Further, at the time of sentencing, the government will not oppose the defense's request for a sentence at the low end of the advisory guideline range.

The District Court accepted Mr. Clarke's plea and adjudicated him guilty on February 12, 2009. Sentencing is set for May 13, 2009 at 9:00 a.m.

### Offense Conduct

Mr. Clarke was stationed on Okinawa, Japan, in the employment of the Department of Defense Schools System. He taught math and science at Kadena Middle School, Kadena Air Base, Japan. While there, his wife, Mrs. Janet Clarke sought, and received counseling about her husband's

interest in pornography from one of the base chaplains. Later, Mr. and Mrs. Clarke both sought, and received marital counseling from the chaplain. Still later, Mrs. Clarke, a friend of the chaplain's wife, confided in the chaplain's wife of her husband's pornography addiction. The chaplain's wife then encouraged Mrs. Clarke to "report" her husband to the command, which she did. The Air Force Office of Special Investigations (AFOSI) was notified, a search authorization was issued by the commander for a search of the Clarke's off-base home, and the computer in question was seized.

When questioned by the AFOSI, Mr. Clarke was not evasive, did not stand on his rights, and freely gave a statement. In that statement of April 26th, 2008, Mr. Clarke stated: "In no case has this pornography been shared with other users or transferred to other media (pin drives, cd's [sic], etc.).... The images represent a private fantasy world.... There has never been an attempt on my part of crossing the line between fantasy and reality. I understand this is an addiction in no way to be confused with engaging in this inappropriate activity beyond the fantasy level."

The Clarke family then received orders to CONUS and, after attending to his mother's final illness in the Tampa area, relocated to North Carolina, where he and his family now reside.

### Sentencing Issues

1. The defense respectfully highlights several matters contained within the presentence investigation report prepared May 4, 2009. Mr. Clarke is a 45 year old, married, father of two. One of his children, Nathan, is the product of the union of Mr. Clarke and his wife, Janet; the other child, Yana, was adopted from Ukraine over eight years ago. Mr. Clarke, among all his siblings, is the only one to have fashioned a "professional" career, having been graduated with a Bachelor of Science degree, a teacher's certification, and a Bachelor of Arts degree. Enclosure 1 to this Sentencing Memorandum are annotations upon Mr. Clarke's school's annual written by his students, obviously, after Mr. Clarke's departure. The Court can discern for itself the respect and admiration his students have for him. Too, their remarks are further proof that the offense conduct truly was "fantasy.

2.  **Military Service.** As the probation office has correctly noted Mr. Clarke served his country with honor in the armed forces. Mr. Clarke served on active duty in the Army as an enlisted soldier from 1984 to 1988, and in the Army Reserve from 1988 to 1995. At the conclusion of each tour of service, he received an honorable discharge.

3.  **Health Issues.** As noted in the PSR, the presence of possible heart problems exists. Additionally, Mr. Clarke suffers and has been suffering from anxiety and depression since at least 2004. As this Court is aware, both can be seriously debilitating.

4.  **Financial Condition.** As the Court will discern from the presentence report, the Clarke family is struggling. After losing his job, Mr. Clarke, the former principal bread-winner of the family, is now employed as a "reader" at $10 per hour. The family's "Net Worth" is $(8,919.08), and its "Net Monthly Cash Flow" is $(28.94). The family does not own any assets.

5.  **Criminal background.** As noted in the PSR, Mr. Clarke's "criminal background" reveals not so much as a single traffic violation.

6.  **Reputation.** Those in closest contact with Mr. Clarke know who know him best (his students' accolades, previously referenced, speak to his character as a professional); his father; his wife; and his children; are supportive and hold him in high regard. Or, in the words of Mrs. Clarke, from the PSR, her husband is a "'great' person and a 'terrific' father.... The children would be devastated were [Rob] incarcerated."

7.  **"Acceptance of Responsibility".** As noted in the PSR, Mr. Clarke has "accepted responsibility." We submit this is so in much more than the technical terms of the guidelines. It is the hope of the defense that he, indeed, receives the advisory guideline deduction of three levels because of this fact. But the defense asks the Court to note the <u>complete and unqualified</u> nature of his acceptance. First, and as noted, when questioned by the AFOSI, Mr. Clarke did not attempt to evade or obfuscate. He did not stand on his "rights," but answered the questions put to him by the authorities straightly and candidly.

Next, Mr. Clarke is being prosecuted pursuant to the Military Extra Territorial Jurisdiction Act – a morass of procedure. He does not challenge this Court's jurisdiction, but submits to the same.

There is the issue of venue. After his return to CONUS from Okinawa, Mr. Clarke's stay in the Tampa area was for the express purpose of attending to his mother's final illness; he then joined his family in North Carolina. Tampa Bay is not Mr. Clarke's home of record, nor did he

reside here. It is clear from the government's own documents (*viz.* the AFOSI statement given by Mr. Clarke on April 26, 2008) that his "Permanent Address or Home of Record" is "Erie, PA". Still, Mr. Clarke waived any challenge to venue in the Middle District of Florida.

Mr. Clarke consented to the filing of an information, thus saving the government the expense, time, effort, and administration of presenting the case to a grand jury, and proceeding by way of an indictment.

Finally, with regret and remorse, Mr. Clarke has pleaded guilty to and accepts responsibility for his actions. (Enclosure 2). General tenants of criminal justice recognize that a plea of guilty can be a first step toward rehabilitation.

**Argument**

As this Court is aware, the United States Supreme Court in *Booker* and *Fanfan* held that the Federal Sentencing Guidelines, as interpreted by *Blakely* violate the 6th Amendment to the Constitution of the United States and the remedy for that violation is striking the language from the Sentencing Reform Act that make the guidelines mandatory. Succinctly, in *Booker's* aftermath, these advisory guidelines are simply to be considered as a single factor among several others that sentencing courts must consider in fashioning a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing established in 18 USC § 3553(a)(2). The four theories or purposes of § 3553 are: retribution, specific deterrence, general deterrence, and rehabilitation. The question then becomes whether under the circumstances of the case involving Mr. Clarke, whether an inflexible application of the advisory guidelines is appropriate. Respectfully, the answer is "no."

In the aftermath of *Booker*, there is ample authority for variances and downward departures from the advisory guidelines in appropriate cases. I respectfully direct the Court's attention to a District Court case for that District Judge's excellent discussion of downward departures in situations which are, in some respects, not inapposite to the case at bar. In United States vs. Ranum, 353 F.Supp.2d 984 (E.D. Wisc. 2005) that Court discusses the collateral effects of a conviction, the defendant's good character, and the need for restitution.

Succinctly, in the aftermath of *Booker* and *Fanfan*, the United States Sentencing Commission's advisory guideline range is only that, advisory. Many other factors now weigh into the sentencing equation in order for the Court to determine a sentence that is "sufficient but not greater that necessary" to achieve the purposes of sentencing set fourth in 18 USC § 3553(a)(2). Further, in compliance with 18 USC § 3553(a)(1) this Court is now required to consider "the history and circumstances of the defendant" and § 3661 provides "no limitation shall be placed on the information concerning the background, character and conduct of the defendant which a Court may receive and consider for the purposes of imposing an appropriate sentence."

In Gall v. United States, No. 06-7949, 522 U.S. ___ (2007), the United States Supreme Court has recently again addressed this subject. In *Gall*, the Supreme Court acknowledged the advisory guidelines as the "starting point" but that they are not the only factors to be considered. "After permitting both parties to argue for a particular sentence, the judge should consider all of the 18 U.S.C. section 3353 (a)'s factors to determine whether they support either party's proposal. He [the District Court] may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented."

In other words, *Gall* solidly comes down on the side of the District Court, as being the judicial officer who is most appropriately suited to hand down sentences for the defendants appearing before them. Put differently, there is no presumption of appropriateness which attaches to the guidelines calculations determined by the Court. A District Court may not simply "assume" the advisory guidelines range as "reasonable," but must make an individualized assessment of appropriateness of sentence based upon the facts of each case. The liberal test of appropriateness is that of the deferential abuse of discretion standard.

The defense distinguishes United States v. Pugh, No. 07-10183 (11th Cir. 2008). In *Pugh*, although also a child pornography case, the advisory guideline range was much higher – (97 to 120 months' imprisonment). Although the advisory range was significantly greater than the case *sub judice*, and although the misconduct alleged there was significantly more egregious than the issues of this case, the District Court imposed a sentence of probation. Here, the offense conduct

is notably less than that of *Pugh*, the *Pugh* guidelines were much more serious, and finally, here, unlike *Pugh*, the defense does not plead for a sentence to probation.

## Summary

In conclusion, Mr. Clarke is completely aware of the debt which he owes to society and he understands and appreciates the fact that some retribution is due the government. To the extent that there may be some publication of this offense, the defense acknowledges the possibility of some general deterrent value. However, Mr. Clarke has learned his lesson and has suffered greatly as a result of his choices. Specific deterrence has already been served.

The advisory guidelines for this offense provide for a period of supervised release of up to life – of itself, a significant "punishment." No matter which state in which the Clarkes ultimately settle, Mr. Clarke is subject to that state's community notification statutes. He has lost his livelihood, and must turn to other employment to support his family. He is a convicted felon, and has forfeited many of the civil rights other citizens continue to enjoy. Finally, and most importantly, for each day of incarceration imposed, the burden on his wife and two children – both financially and emotionally – continue to grow.

There only remains as to what would be appropriate for Mr. Clarke's rehabilitation. We suggest that answering the question bespeaks the answer. No lengthy sentence to confinement will assist the rehabilitative process. Indeed, when considering Mr. Clarke's medical condition, and the needs of his family, a lengthy term of confinement would appear to be counterproductive to all concerned.

The defense respectfully suggests that a sentence of protracted confinement within the advisory guideline range to be inappropriate under these circumstances and would not well-serve the United States, Robert Clarke, or his family. Mr. Clarke is a good man, who has spent his life living well as a contributing member of society. It is an easy thing to fall into the trappings of judging a man by the worst thing he has ever done. We simply ask this Court not to do so, and to return a sentence that also takes into consideration his years of significant contributions to society and the welfare of his family.

Respectfully submitted this the 8th day of May, 2009.

S// *Victor Kelley*
Victor Kelley
Attorney for Robert Clarke
205 North 20th Street
Suite 1010
Birmingham, Alabama   35203
205-244-1449

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2009 I electronically filed the foregoing with the Clerk of Court by using the EM/ECF system which will send a notice of electronic filing to the following:

1. Mr. Jay L. Hoffer
   Assistant United States Attorney
   400 North Tampa Street
   Tampa, FL 33602

2. Mr. Marcus S. Lawrence, Jr.
   402 East Oak Avenue
   Tampa, FL 33602

S// *Victor Kelley*
Victor Kelley